In re ALBURTIS SILK RIBBON MILLS.

(District Court, E. D. Pennsylvania. July 31, 1917.)

No. 5684.

PAYMENT ⊂⊃26—APPLICATION OF PROCEEDS OF COLLATERAL SECURITY.

    A bank held the bankrupt's note for $14,800, with which bonds in the same amount secured by a mortgage on real estate were deposited as collateral security, under an agreement that they were to be held as security for the payment of the note and any other indebtedness. The bank also held the bankrupt's note for $2,000. Shortly before bankruptcy, it sold the collateral bonds at public sale, and purchased them itself for $8,140, and in bankruptcy it sought to prove the balance of the debt of $14,800, in addition to the note of $2,000. The mortgaged property was sold, and from the proceeds the bank, as owner of the bonds, received the full amount of $14,800. Held, that there was no deficiency on the note for $14,800 provable in bankruptcy, as the note and the bonds represented the same debt, and the note was merged in the higher security, which had been paid.

In Bankruptcy. In the matter of the Alburtis Silk Ribbon Mills, bankrupt. On certificate of the referee. Order of the referee affirmed, and petition dismissed.

Calvin E. Arner, of Allentown, Pa., for petitioner.
Reuben J. Butz, of Allentown, Pa., for trustee.

THOMPSON, District Judge. On June 1, 1910, the Alburtis Silk Ribbon Mills executed a mortgage or deed of trust of its real estate to Thomas E. Ritter, as trustee, to secure its bonds, amounting to $16,-000. Thomas E. Ritter was vice president of the Second National

Bank of Allentown, Pa. The Second National Bank loaned the corporation $16,000 upon a demand note, and received the entire issue of bonds as collateral security. Bonds to the amount of $1,200 were sold at par; the bank receiving the proceeds on account of the note, which was thus reduced to $14,800, and was accompanied with $14,800 in par value of the bonds as collateral security. The note contained a promise to pay on demand $14,800, and recited the deposit of the bonds as collateral security for the payment of the note and all other present or future indebtedness or liability of any kind to the holder. The holder is given authority to sell the whole or any part thereof, either at public or private sale. In case of deficiency, the maker agrees to pay to the holder the amount thereof forthwith after such sale. It is also agreed that, in case of sale of any of the collateral at public auction, the holder, if the highest bidder, may become the purchaser thereof in its own right.

On December 4, 1915, the bank sold the bonds, which it held as collateral, at public sale, and purchased the same for 55 per cent. of their face value, namely, $8,140. This amount, deducting the expenses of sale, $4.13, was credited by the bank on account of the $14,800 note, thus leaving a balance due thereon, as claimed by the bank, of $6,664.13. There was one other bidder at the sale of the collateral, but who he was and the extent to which the bidding was competitive does not appear. On December 23, 1915, Thomas E. Ritter, the trustee under the mortgage, who was then the president of the bank, sued out a writ of scire facias, and on January 11, 1916, judgment was entered by default for the sum of $17,586.66, which represented the real debt of $16,000, with interest, insurance premiums, trustee's compensation, and attorney's commission. A writ of levari facias was issued on the same day, and the sheriff made a levy thereunder and advertised the property for sale.

On January 12, 1916, a creditors' petition in bankruptcy was filed, and the corporation was adjudicated a bankrupt on February 2, 1916. The bank was at that time the holder of the note for $14,800 and another note of the bankrupt for $2,000, dated October 8, 1915, payable one month after its date. Interest had been paid on the demand note to November 1, 1915. The sheriff's sale was stayed on application to this court. The real estate was afterwards sold by the trustee in bankruptcy at public sale, discharged of the lien of the mortgage, for $21,000. Thomas E. Ritter became the purchaser. He purchased the property in the interest of the bank, and sold it to another at a profit of about $1,500, the benefit of which went to the bank. The bank, as holder of bonds to the amount of $14,800, received that sum, with interest out of the proceeds of the sale.

Being also still the holder of the note for $14,800 and the note for $2,000, it presented a claim before the referee in bankruptcy as follows: (1) For the balance of $6,664.13 due on the promissory note, dated November 1, 1913, for $14,800 on demand, with interest, executed by the Alburtis Silk Ribbon Mills, payable to Second National Bank, Allentown, Pa. (2) For the amount of the promissory note of $2,000,

dated October 8, 1915, payable one month after said date, executed by the said corporation and by them indorsed. Objection having been made to the first item of the claim, the referee made the following order:

· And now, December 27, 1916, it appearing after rehearing upon the claim of the Second National Bank as filed before the referee on the 10th day of March, 1916, for the sum of $8,664.13, and that said claim includes an item of $6,664.13, being the difference between the sum of $8,135.87 realized by the bank upon a sale to itself of the mortgage bonds of the bankrupt company, pledged to the bank as collateral for the two notes upon which the claim is founded, and the sum of $14,800, afterwards received by the bank for said bonds out of the proceeds of the sale in bankruptcy of the mortgaged premises, and the referee being of the opinion that the payment of $14,800 was in fact and in law a payment on account of the notes: Ordered that said claim be reduced by the amount of $6,664.13 in its principal sum, to wit, to $2,000, and that it stand at that figure for all purposes of said bankruptcy in common with other unsecured creditors, the parties, however, hereafter submitting a calculation accounting for both principal of bonds so as aforesaid received and interest thereon, on account of the claim, and when such calculation is submitted and approved, the amount of the claim will be fixed anew in the amount to be shown by the calculation."

When the $14,800 of the bonds of the bankrupt were delivered to the bank, they were secured by the mortgage of the bankrupt's real estate. The bonds thus secured were taken as collateral for the loan of $14,800, and afterwards, under the terms of the collateral clause of the note, became security for the note of $2,000. After the sale of the collateral, the bank claims to have become the holder of the bonds, not as collateral, but in its own right. The bank sold the bonds to itself, and credited the entire amount at which it bid them in upon the $14,800 note, so that, as far as the security is concerned, the transaction was in relation to the $14,800 note alone. The bank thereupon held obligations of the same debtor, the bankrupt, consisting of the notes and the bonds, the demand note and the bonds both being for the same debt, namely, $14,800, and the $2,000 note being now unsecured. The bank, having received the $14,800 debt in full out of the proceeds of the mortgaged premises, is now attempting to collect an alleged deficiency of $6,664.13, with interest, upon the note, which is merely another evidence of the same indebtedness as is evidenced by the bonds.

Having received the full amount of its debt upon the bond, it cannot recover the alleged deficiency upon the note, for, in the first place, there is no deficiency, as the debt has been paid in full, and the bank, being the holder of a higher degree of security for the same debt, the note merged in the bond. Jones v. Johnson, 3 Watts & S. (Pa.) 276, 38 Am. Dec. 760. It is apparent from the evidence that the bank, realizing that the Alburtis Silk Ribbon Mills was in a failing condition some months before the bankruptcy, undertook this method of procedure in order to protect itself upon the $2,000 note due November 8, 1915. It elected, however, not to treat the $2,000 note as being secured by the collateral, and comes in as a general creditor upon that note. It is within its right in presenting the $2,000 note as an unsecured claim, but, for the reasons stated, can recover upon that alone.

The order of the referee is affirmed, and petition dismissed.